**UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO
Honorable Howard R. Tallman**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | |
| **POSEIDON CONCEPTS CORP.,** | ) | |
| | ) | |
| **Lead Debtor in Foreign Proceeding.** | ) | |
| | ) | |
| | ) | **Case No. 13-15893 HRT** |
| **KING OIL FIELD SERVICES, LLP,** | ) | **Chapter 15** |
| | ) | **(Jointly Administered)** |
| **Movant,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **PRICEWATERHOUSECOOPERS,** | ) | |
| **Monitor and Foreign Representative** | ) | |
| | ) | |
| **Respondent.** | ) | |

## ORDER ON MOTION TO LIFT STAY

This case comes before the Court on Movant's *Motion for Relief from Stay* (docket #175) (the "Motion").

King Oil Field Services, LLP, ("King") seeks relief from stay in order to litigate its lien claims against property of the estate in the District Court, Northwest Judicial District, County of Mountrail, North Dakota (the "State Court"). The Court held a preliminary hearing on the Motion on August 26, 2014, and took the matter under advisement.

## I.  BACKGROUND

On May 31, 2013, the Monitor filed a motion to sell assets of the jointly administered Debtors. King objected. In its objection, King asserted that it had provided pre-petition services to Poseidon Concepts, Inc., which failed to pay for the services provided to it. King filed a civil action in the State Court against Poseidon Concepts, Inc., Case No. 31-2012-CV187, on or about November 6, 2012, in order to collect its debt. On November 21, 2012, the State Court issued an order granting King's request for a pre-trial attachment (the "State Court Order"). The State Court Order provides "[t]hat the Defendant's water tanks and other miscellaneous items that are currently being stored on Plaintiff's property shall remain in Plaintiff's possession until further Order of this Court." King's objection to the sale asserted that the State Court Order constitutes a lien on certain of the assets that the Monitor sought to sell.

ORDER ON MOTION TO LIFT STAY
Case No. 13-15893 HRT

The Monitor's sale motion came on for hearing on June 18, 2013.  King appeared through counsel and withdrew its objection on the record.  The Court entered the order tendered by the Monitor.  As part of the resolution of King's objection, the Court's *Order Authorizing the Sale of the Purchased Assets Free and Clear of All Liens, Claims, and Interests* (docket #117) (the "Sale Order") provides:

> Vendors shall deposit $525,000 (U.S.D.) of the Purchase Price in a segregated account pending resolution of the validity and priority of the lien claim asserted by King Oil Field Services, LLP, which amount shall remain on deposit until further order of this Court.

Sale Order at ¶13.  In addition, the Sale Order provides in relevant part that

> Except as otherwise provided by the Sale Documents or this Order, all persons and entities . . . holding Liens, Claims or interests . . . against or in any of . . . the Purchased Assets . . . arising . . . in connection with the Purchased Assets . . . prior to the Closing or the Sale, are forever barred, estopped and permanently enjoined from asserting, other than in this Court which shall retain exclusive jurisdiction to hear such controversies, against Purchaser, its successors or assigns, its property or the Purchased Assets, such persons' or entities' Liens, Claims or interests.

Sale Order at ¶16.

## II.  DISCUSSION

The Court finds that King agreed to have $525,000.00 of the sale proceeds set aside in a segregated account to protect its lien claim and it further agreed to entry of the Sale Order that, *inter alia*, provides for the exclusive jurisdiction of this Court to adjudicate any disputes that it may have concerning the treatment of its lien claim.  It now seeks to abrogate its agreement – vacating a portion of the Court's Sale Order in the process – and litigate its dispute in the State Court.

A.  11 U.S.C. § 362(d)(1) – Cause – Totality of the Circumstances

Where a party in interest seeks relief from stay for cause, under 11 U.S.C. § 362(d)(1), courts determine whether cause exists "based on the totality of the circumstances in each particular case."  *In re Wilson*, 116 F.3d 87, 90 (3rd. Cir. 1997).  *See also In re Feingold*, 730 F.3d 1268, 1276-77 (11th Cir. 2013); *In re Gindi*, 642 F.3d 865, 872 (10th Cir. 2011); *In re Busch*, 294 B.R. 137, 141-42 (B.A.P. 10th Cir. 2003); *Matter of Baptist Medical Center of New York, Inc.*, 52 B.R. 417, 425 (D.C. N.Y. 1985); *In re Neals*, 459 B.R. 612, 619 (Bankr. D. S.C. 2011); *In re Caldwell*, 101 B.R. 728, 732 (Bankr. D. Utah 1989).

ORDER ON MOTION TO LIFT STAY
Case No. 13-15893 HRT

In those cases where the movant seeks relief in order to continue litigation in another forum, courts frequently analyze the factors set out in *In re Curtis*, 40 B.R. 795, 799-800 (Bankr. D. Utah 1984), as an aid to their totality of the circumstances inquiry. *In re Busch*, 294 B.R. 137, 141 (B.A.P. 10th Cir. 2003) ("The *Curtis* factors have been widely adopted by bankruptcy courts."). Such an analysis frequently takes into account factors such as the effect of the litigation on administration of the estate; judicial economy; and an equitable balancing of the effect of stay relief on the parties. *Curtis*, 40 B.R. at 799-800.

Those are all factors that King had an opportunity to take into consideration at the time it agreed to the arrangement to place a portion of sale proceeds into a segregated account and to litigate its lien claim, if necessary, in this Court. It withdrew its objection to the asset sale and allowed its agreement to be made an order of the Court.

King's Motion asks for relief from the automatic stay. But that is relief that would directly contradict provisions of the Court's Sale Order – an order of the Court that became final over a year ago. As a result, the threshold consideration in this case is whether or not King is bound by the Court's Sale Order. The Court will not reach the equitable balancing represented by a *Curtis* factors analysis unless it can first find that cause exists to vacate that portion of its Sale Order that requires litigation of King's lien claim in this Court.

To overcome the threshold issue, King bears the burden to demonstrate cause for granting relief from a final order of this Court under FED. R. CIV. P. 60.[1]

Under Rule 60(a), a party may obtain relief from a judgment or order on grounds of "clerical mistake or a mistake arising from oversight or omission." The Court does not find – nor does King allege – a clerical mistake or a mistake arising from oversight or omission in the Court's Sale Order.

Under Rule 60(b), a party may obtain relief from a judgment or order under any one of six enumerated grounds:

    (1)      mistake, inadvertence, surprise, or excusable neglect;

    (2)      newly discovered evidence that, with reasonable diligence, could not have been discovered in time to move for a new trial under Rule 59(b);

    (3)      fraud (whether previously called intrinsic or extrinsic), misrepresentation, or misconduct by an opposing party;

    (4)      the judgment is void;

---

[1] Made applicable to this proceeding by FED. R. BANKR. P. 9024.

ORDER ON MOTION TO LIFT STAY
Case No. 13-15893 HRT

(5)    the judgment has been satisfied, released or discharged; it is based on an earlier judgment that has been reversed or vacated; or applying it prospectively is no longer equitable; or

(6)    any other reason that justifies relief.[2]

At the preliminary hearing – but not in its Motion – King argued that the provision of the Court's Sale Order retaining jurisdiction to hear disputes relating to liens and interests in the assets sold under the Sale Order is improper under *Stern v. Marshall*, 131 S. Ct. 2594 (2011), and under the *Rooker-Feldman* doctrine. *See Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983).

The Court agrees with King that its agreement with the Monitor to litigate any disputes in this Court and the Court's Sale Order cannot create jurisdiction that does not otherwise exist. Those arguments properly go to Rule 60(b)(4), which allows the Court to grant relief from its judgment if the judgment, or a portion of the judgment, is void. If the dispute over King's lien claim cannot be heard in this Court, either under *Stern* or the *Rooker-Feldman* doctrine, then it must grant King relief from that portion of the Sale Order under Rule 60(b)(4).

King argues that, under *Stern,* the Court would violate Article III of the U.S. Constitution if it should enter a final judgment adjudicating the parties' lien dispute. It further argues that jurisdiction of a federal trial court over the parties' dispute is prohibited by the *Rooker-Feldman* doctrine because that would constitute an appeal of the State Court Order to a lower federal court.

B.  *Stern v. Marshall*

*Stern v. Marshall*, 131 S. Ct. 2594 (2011), addresses the interaction between the federal district courts and the bankruptcy courts. The distinction between the district courts, established under Article III of the Constitution, and the bankruptcy courts, established by Congress under its Article I legislative power, is not esoteric. It is fundamental and goes to the separation of powers between the judicial and legislative branches. The legislative branch may not define the authority of the bankruptcy courts to adjudicate disputes in a manner that encroaches on the

---

[2] Despite the seemingly broad language of Rule 60(b)(6), it's scope is narrow. Relief under Rule 60(b)(6) is "extraordinary and reserved for exceptional circumstances." *McGraw v. Barnhart*, 450 F.3d 493 (10th Cir. 2006). Rule 60(b)(6) gives a court the flexibility to grant relief that does not fit neatly under the categories described in subsections (1) through (5) of Rule 60(b) but it does not expand the reach of Rule 60(b) beyond the type of extraordinary circumstances stated in those subsections. "Rule 60(b)(6) relief . . . is appropriate only 'when it offends justice to deny such relief.'" *Zurich North America v. Matrix Service, Inc.*, 426 F.3d 1281, 1293 (10th Cir. 2005) (further citations omitted).

ORDER ON MOTION TO LIFT STAY
Case No. 13-15893 HRT

exclusive constitutional prerogative of the judicial branch to exercise the "judicial power of the United States." U.S. CONST. art III, § 1. *See also Stern*, 131 S. Ct. at 2608-2609.

Federal subject matter jurisdiction over bankruptcy matters is not granted to the bankruptcy courts but to the districts courts. 28 U.S.C. § 1334. That jurisdiction extends to "all cases under title 11," as well as "all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b). In turn, the district courts refer bankruptcy matters to the bankruptcy courts under 28 U.S.C. § 157.

Section 157 confines the bankruptcy courts' statutory authority to enter final judgments to "core" bankruptcy matters.[3] The term "core" as it is used in § 157 has no intrinsic meaning or

---

[3] Section 157(b) provides statutory authority for bankruptcy courts to enter final judgments in core bankruptcy matters and subsection (b)(2) lists examples of core matters:
  (1) Bankruptcy judges may hear and determine all cases under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under subsection (a) of this section, and may enter appropriate orders and judgments, subject to review under section 158 of this title.
  (2) Core proceedings include, but are not limited to–
        (A) matters concerning the administration of the estate;
        (B) allowance or disallowance of claims against the estate or exemptions from property of the estate, and estimation of claims or interests for the purposes of confirming a plan under chapter 11, 12, or 13 of title 11 but not the liquidation or estimation of contingent or unliquidated personal injury tort or wrongful death claims against the estate for purposes of distribution in a case under title 11;
        (C) counterclaims by the estate against persons filing claims against the estate;
        (D) orders in respect to obtaining credit;
        (E) orders to turn over property of the estate;
        (F) proceedings to determine, avoid, or recover preferences;
        (G) motions to terminate, annul, or modify the automatic stay;
        (H) proceedings to determine, avoid, or recover fraudulent conveyances;
        (I) determinations as to the dischargeability of particular debts;
        (J) objections to discharges;
        (K) determinations of the validity, extent, or priority of liens;
        (L) confirmations of plans;
        (M) orders approving the use or lease of property, including the use of cash collateral;
        (N) orders approving the sale of property other than property resulting

(continued...)

ORDER ON MOTION TO LIFT STAY
Case No. 13-15893 HRT

significance.  It can only be understood by reference to the list of examples of core proceedings that appears in § 157(b)(2) and by reference to Supreme Court cases that explore the limits of bankruptcy court authority.  *See, e.g., Northern Pipeline Const. Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 71 (1982) ("[T]he restructuring of debtor-creditor relations . . . is at the core of the federal bankruptcy power . . ..").  A core bankruptcy matter, generally speaking, is one that is integrally related to the restructuring of the debtor-creditor relationship.  *Langenkamp v. Culp*, 498 U.S. 42, 44-45 (1990); *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 54-55 (1989).

Because a bankruptcy court's authority to enter final judgments is limited to core matters, those matters that are simply "related to" a bankruptcy case but are not "cases under title 11" or "core proceedings arising under title 11, or arising in a case under title 11" are excluded.  28 U.S.C. § 157(b)(1).  The district courts may enter final judgments in those non-core bankruptcy related matters but the bankruptcy courts may not.  28 U.S.C. § 157(c)(1).  "The problem with literal application of § 157(b)(2)'s identification of core proceedings, though, is that it literally includes proceedings in which it is clearly unconstitutional for non-Article III bankruptcy judges to enter final orders and judgments."  Ralph Brubaker, *A "Summary" Statutory and Constitutional Theory of Bankruptcy Judges' Core Jurisdiction after Stern v. Marshall*, 86 Am. Bankr. L.J. 121, 136 (2012).

In *Stern v. Marshall*, the Supreme Court invalidated 28 U.S.C. § 157(b)(2) to the extent that the statute purports to grant authority for bankruptcy courts to enter final judgments in matters that are not truly core bankruptcy proceedings.  *Stern*, 131 S. Ct. at 2608-20.  In a more recent case, the Supreme Court summarized *Stern's* holding: "*Stern* made clear that some claims labeled by Congress as 'core' may not be adjudicated by a bankruptcy court in the manner designated by § 157(b)."  *Executive Benefits Ins. Agency v. Arkison*, 134 S. Ct. 2165, 2172.  There, the Supreme Court coined the term "*Stern* claim" to describe "a claim designated for final adjudication in the bankruptcy court as a statutory matter, but prohibited from proceeding in that way as a constitutional matter."  *Id.* at 2170.

In *Stern*, the debtor asserted a counterclaim against a creditor who had filed a proof of claim against the assets of the bankruptcy estate.  Bankruptcy courts have the *statutory* authority

---

[3](...continued)
from claims brought by the estate against persons who have not filed claims against the estate;
(O) other proceedings affecting the liquidation of the assets of the estate or the adjustment of the debtor-creditor or the equity security holder relationship, except personal injury tort or wrongful death claims; and
(P) recognition of foreign proceedings and other matters under chapter 15 of title 11.
28 U.S.C. § 157(b).

ORDER ON MOTION TO LIFT STAY
Case No. 13-15893 HRT

to enter final judgments on "counterclaims by the estate against persons filing claims against the estate." 28 U.S.C. § 157(b)(2)(C).  Relying on that authority, the bankruptcy court adjudicated the counterclaim.  But the Supreme Court looked at the nature of the counterclaim and found that it was not a core bankruptcy matter because its subject matter was a traditional common law cause of action that could be resolved separate and apart from allowance of the creditor's claim. *Stern*, 131 S. Ct. at 2616.  Because the counterclaim was not a core bankruptcy matter, notwithstanding the apparent statutory authority in § 157(b)(2)(C), the bankruptcy court could not constitutionally enter final judgment on the counterclaim.  *Id*. at 2620.

Without question the debtor's counterclaim in *Stern* was related to the bankruptcy case and a recovery on the debtor's counterclaim would serve to augment the bankruptcy estate, *id*. at 2614, but that was not enough to bring the counterclaim within the core of federal bankruptcy jurisdiction.  The Supreme Court addressed similar issues in *Northern Pipeline* and *Granfinanciera*.  In *Northern Pipeline*, the Supreme Court considered a state law contract action brought by the bankruptcy estate against a third party.  In *Granfinanciera*, it considered a fraudulent conveyance claim brought by the estate against a creditor.  In neither case did the Supreme Court find that the estate's purpose of augmenting its assets was closely enough related to the governmental interest of restructuring debtor-creditor relationships to bring those suits within the ambit of core bankruptcy jurisdiction.  *Northern Pipeline*, 458 U.S. at 69-70; *Granfinanciera*, 492 U.S. at 54-56.

King argues that *Stern* is applicable in this case because the determination of the validity, extent, and priority of its lien claim is controlled by North Dakota law.  So it appears.  The test, however, is whether or not King's lien claim is a core bankruptcy matter that may be fully adjudicated in this Court.

The fact that a controversy is controlled by state law is insufficient, in and of itself, to remove the matter from the core of federal bankruptcy jurisdiction and deprive a bankruptcy court of authority, under 28 U.S.C. § 157(b), as limited by *Stern,* to enter a final judgment.  Section 157 provides that "[a] determination that a proceeding is not a core proceeding shall not be made solely on the basis that its resolution may be affected by State law."  28 U.S.C. § 157(b)(3).  That state law may control the allowance or disallowance of a claim and associated lien rights is unremarkable.  To the contrary, it is the rare case where state law does not control such matters.  The issue is not whether state or federal law controls King's lien rights.  The issue is whether the determination of those rights is a core bankruptcy matter.

It is a core matter because the determination of King's lien rights is inseparable from the determination of the claim that it filed in this case.  *Stern*, 131 S. Ct. at 2618 (If "the action at issue stems from the bankruptcy itself or *would necessarily be resolved in the claims allowance process*," it is a core bankruptcy matter.) (emphasis added).  King filed a proof of claim in this bankruptcy case and the determination of it's lien is part and parcel of the allowance of its claim. King has actively sought that determination in this Court by filing its claim and asserting its lien

as part of its claim.  Claim allowance is central to the "restructuring of the debtor-creditor relations."  *Northern Pipeline*, 458 U.S. at 71.  *See also Langenkamp v. Culp*, 498 U.S. 42, 44 (1990) ("In *Granfinanciera* we recognized that by filing a claim against a bankruptcy estate the creditor triggers the process of 'allowance and disallowance of claims,' thereby subjecting himself to the bankruptcy court's equitable power.") (citing *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 58-59 and n.14 (1989)).

Moreover, King asserts it's lien against property of the bankruptcy estate.  The Supreme Court observed in *Central Virginia Community College v. Katz*, 546 U.S. 356 (2006), that "[b]ankruptcy jurisdiction, at its core, is *in rem*."  *Id*. at 362.  While the statement is dicta in the context of a sovereign immunity case, it expresses the fundamental understanding that the property of the bankruptcy estate – the *res* of the estate – lies at the heart of the bankruptcy court's ability to adjust the debtor-creditor relationship.  A bankruptcy court's jurisdiction over the *res* of the estate necessarily embraces the ability to determine the interests, including lien interests, in the property of the bankruptcy estate.  So, even if King had not filed a proof of claim, the determination of its lien rights is a core proceeding that is unaffected by the holding in *Stern*.  *See, e.g., In re Renaissance Hosp. Grand Prairie Inc.*, 713 F.3d 285, 294 (5th Cir. 2013) ("While *Stern* . . . may understate the . . . encroachment upon the Judicial Branch posed by Section 157(b)(2), which enumerates a list of 'core proceedings,' the determination of the priority of liens is not likely such an encroachment."); *In re Washington Coast I, L.L.C.*, 485 B.R. 393, 406-407 (B.A.P. 9th Cir. 2012) (*Stern* did not limit power of the bankruptcy court to adjudicate dispute between creditors over priority of liens in estate property.).

The allowance or disallowance of claims and the determination of liens are statutorily designated as core proceedings under §§ 157(b)(2)(B) and (K).  In addition, they lie well within the constitutional limits of bankruptcy court authority discussed in *Stern*.  Because King's lien claim is inseparable from the claim it filed in this case and because its lien is asserted against assets of the estate, the determination of those lien rights falls squarely within the Court's authority to enter final judgments in core bankruptcy matters.

Finally, the lack of authority in the bankruptcy courts to enter final judgments in some bankruptcy related matters should not be confused with federal subject matter jurisdiction over bankruptcy matters.  If King were correct and if *Stern* were applicable to this case, it would have no effect on federal subject matter jurisdiction over its lien claim in this bankruptcy case.  The Supreme Court recognized in *Stern* that § 157 does not affect federal bankruptcy jurisdiction.  According to the Supreme Court, § 157 "allocates the authority to enter final judgment between the bankruptcy court and the district court. . . . That allocation does not implicate questions of subject matter jurisdiction."  *Stern*, 131 S. Ct. at 2607 (citations omitted).

The practical effect of a determination that a matter does not fall under the bankruptcy court's authority to enter final judgments in core bankruptcy matters is that either: 1) a party moves the district court to withdraw the reference and, if the motion is granted, the matter is

ORDER ON MOTION TO LIFT STAY
Case No. 13-15893 HRT

adjudicated in district court; or 2) if the reference is not withdrawn, the bankruptcy court enters proposed findings and conclusions for the district court's review.  28 U.S.C. § 157(c)(1).  According to § 157(c)(1), when a bankruptcy court presides over "a proceeding that is not a core proceeding but that is otherwise related to a case under title 11 . . . , the bankruptcy judge shall submit proposed findings of fact and conclusions of law to the district court, and any final order or judgment shall be entered by the district judge after considering the bankruptcy judge's proposed findings and conclusions and after reviewing de novo those matters to which any party has timely and specifically objected."  28 U.S.C. § 157(c)(1); *See also Executive Benefits Ins. Agency v. Arkison*, 134 S. Ct. 2165, 2173 (2014) ("If the claim satisfies the criteria of § 157(c)(1), the bankruptcy court simply treats the claims as non-core . . . .").

Because King's lien claim is a core bankruptcy matter, *Stern* does not affect the Court's authority, under 28 U.S.C. § 157(b)(2), to adjudicate the matter and enter final judgment. Therefore, the Court finds that *Stern* does not require the Court to grant King relief from the Sale Order under Rule 60(b)(4).

C.  The *Rooker-Feldman* Doctrine

The Court also rejects King's assertion that the *Rooker-Feldman* doctrine is implicated in this case.  The basis of the *Rooker-Feldman* doctrine is the fact that "appellate jurisdiction to reverse or modify a state-court judgment is lodged . . . by 28 U.S.C. § 1257, exclusively in [the U.S. Supreme Court].  Federal district courts . . . are empowered to exercise original, not appellate, jurisdiction."  *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 283 (2005).  Inferior federal courts are prohibited from undertaking an appellate review of state court judgments.

In *Exxon Mobil* the Supreme Court held that the *Rooker-Feldman* doctrine does not apply where proceedings in the state court have not been completed.  544 U.S. at 291-94.  Thus, under *Exxon Mobil* and *Rooker-Feldman*, a court is required to look to whether a final judgment has been entered in the state proceeding to determine the applicability of the doctrine.  In the instant Motion, King seeks to return to the State Court to complete the proceedings that it commenced in the State Court.  The State Court Order is no final judgment.  It is a preliminary order intended to insure assets will be available to satisfy the judgment that King anticipated winning against Poseidon.[4]  The State Court Order made no final determination as to the rights of the litigants.

---

[4] "An attachment is a provisional remedy granted to the plaintiff in an action, which enables him to have property of the defendant seized by an officer and held in the custody of the law as security for the satisfaction of any judgment that he may recover. . . .  When the court determines that the plaintiff is entitled to judgment, 'then, and only then, can the property that has been seized be applied to payment of the judgment.'"  *In re McNeely*, 51 B.R. 816, 818

(continued...)

ORDER ON MOTION TO LIFT STAY
Case No. 13-15893 HRT

No final judgment has entered.  The *Rooker-Feldman* doctrine is no bar to this Court hearing the parties' dispute.

## III.  CONCLUSION

The Court finds that King has not shown grounds under Rule 60 for relief from the Court's Sale Order.  Neither *Stern* or the *Rooker-Feldman* doctrine affect the Court's authority to adjudicate King's lien claim.  Because King is not entitled to relief from the Court's Sale Order under Rule 60, no purpose would be served by reviewing the equitable factors embodied in *In re Curtis*, 40 B.R. 795, 799-800 (Bankr. D. Utah 1984).  Such equitable balancing cannot overcome the Court's Sale Order, incorporating the agreement between the King and the Monitor, that enjoins King from seeking to litigate its lien claim in any court other than this one.

Therefore, it is

**ORDERED** that King Oil Field Services, LLP's, *Motion for Relief from Stay* (docket #175) is denied.

Dated this __25th__ day of September, 2014.

**BY THE COURT:**

*Howard Tallman*

Howard R. Tallman, Judge
United States Bankruptcy Court

---

[4](...continued)
(Bankr. D. Utah 1985) (quoting *Bristol v. Brent*, 103 P. 1076, 1079 (Utah 1909); citing *Jesse v. Birchell*, 257 P.2d 255, 257-58 (Or. 1953)).