UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF COLORADO

| | |
|---|---|
| In re: <br><br> POSEIDON CONCEPTS CORP., <br><br> Debtor in Foreign Proceeding. | Bankruptcy Case No. 13-15893 <br><br> KHT Chapter 15 |
| In re: <br><br> POSEIDON CONCEPTS LTD., <br><br> Debtor in Foreign Proceeding. | Bankruptcy Case No. 13-15894 <br><br> KHT Chapter 15 |
| In re: <br><br> POSEIDON CONCEPTS LIMITED PARTNERSHIP., <br><br> Debtor in Foreign Proceeding. | Bankruptcy Case No. 13-15895 <br><br> KHT Chapter 15 |
| In re: <br><br> POSEIDON CONCEPTS INC., <br><br> Debtor in Foreign Proceeding. | Bankruptcy Case No. 13-15896 <br><br> KHT Chapter 15 |

**MONITOR'S MOTION FOR RECOGNITION OF ORDER APPROVING CCAA AMENDED PLAN OF COMPROMISE AND ARRANGEMENT**

PricewaterhouseCoopers Inc., as the court-appointed monitor and authorized foreign representative of Poseidon Concepts Corp., Poseidon Concepts Ltd., Poseidon Concepts Limited Partnership, and Poseidon Concepts Inc. (collectively referred to as the "PC Debtors") in the proceeding pending in the Court of Queen's Bench of Alberta, Canada (the "Canadian Proceeding" or the "Canadian Court") under the Companies' Creditors Arrangement Act (the "CCAA"), by and through its undersigned counsel, Lewis Roca Rothgerber Christie LLP, hereby moves for recognition of an Order approving an Amended Plan of Compromise and

104903660_2

Arrangement entered by the Court of Queen's Bench of Alberta, Canada on May 4, 2018, and states as follows:

## INTRODUCTION AND REQUESTED RELIEF

1. PricewaterhouseCoopers Inc. ("PWC") is the court-appointed monitor for the PC Debtors (the "Monitor") pursuant to an Order dated April 9, 2013, entered by the Canadian Court. By this Motion and pursuant to 11 U.S.C. §§ 1507 and 1521, the Monitor requests this Court to grant recognition of an Order approving an Amended Plan of Compromise and Arrangement entered by the Canadian Court on May 4, 2018 ("Plan Order").

## BACKGROUND

### The Structure and General Operations of the PC Debtors

2. Poseidon Concepts Corp. ("PC Canada") is a corporation formed under the laws of Alberta, Canada that maintained its principal place of business in Calgary, Alberta, Canada. Poseidon Concepts Ltd. is a corporation formed under the laws of Alberta Canada and a wholly-owned subsidiary of PC Canada. Poseidon Concepts Inc. ("PC Inc.") is a Delaware corporation that is wholly-owned by PC Canada. Poseidon Concepts Limited Partnership is a partnership organized under the laws of Alberta, Canada. The registered office of each of the PC Debtors is in Alberta, Canada.

3. Headquartered in Calgary, Alberta with operations throughout Western Canada and the United States, PC Canada was a pioneer of large-volume modular fluid tanks, with a fleet of 416 PC Canada-owned rental units. The tanks were provided on a rental basis to support customers' on-site fluid management needs, primarily for use in conjunction with oil and gas fracking operations. PC Canada leased 324 of the Tanks to PC Inc. for use by customers in the

U.S., scattered among seven states (Colorado, Texas, Pennsylvania, North Dakota, Montana, Utah, and Oklahoma). The remaining 92 Tanks were in Canada.

4. In addition to the tanks, PC Canada also owned 27 Volcano™ E-Z Heat heaters for lease to its customers. The heaters circulate heating fluid through piping and radiators placed inside the Tanks, which enabled the fracturing fluids to achieve and maintain the desired temperature and intended viscosity.

5. The operations of the PC Debtors were financed through a number of credit facilities provided by a syndicate of lenders ("Lending Syndicate"), which obtained a general security agreement of all of the assets of the PC Debtors in Canada and the U.S. The Lending Syndicate consists of The Toronto-Dominion Bank, as lead lender, along with the participating bank lenders, HSBC Bank Canada, National Bank of Canada and the Bank of Nova Scotia. At the time of the CCAA filing, the Lending Syndicate was owed approximately $79.5 million.

**Events Leading to the Commencement of the Canadian Proceeding**

6. In the fall of 2012, it was disclosed that approximately $95 million to $106 million of the PC Canada's $148.1 million in revenue for the 9 months ended September 30, 2012 should not have been recorded as revenue in the financial statements.

7. On November 14, 2012, PC Canada announced earnings significantly lower than the market expected. This caused the value of its shares to plummet 62% in one day. The first of various class action lawsuits was filed in late November.

8. Based on the foregoing, the decision was made to seek protection under the insolvency laws of Canada and the United States in order to stabilize operations of the PC Debtors and seek a strategic investor or buyer.

**The Canadian and U.S. Proceedings**

9. The CCAA is a Canadian federal Act[1] that affords financially troubled corporations the opportunity to restructure their financial affairs through a formal process commonly known as a "Plan of Arrangement." The process is commenced by applying to the Canadian court for protection under the CCAA.

10. On April 9, 2013, the PC Debtors instituted the Canadian Proceedings by filing applications for the commencement of reorganization proceedings pursuant to the CCAA in the Canadian Court. On April 9, 2013, the Canadian Court granted an initial order (the "CCAA Order") for relief in the Canadian Proceedings.

11. Also, on April 9, 2013, the Canadian Court appointed PWC as the Monitor of the Canadian Proceedings under the CCAA Order. The Monitor's role in the Canadian Proceedings is to supervise the property and business affairs of the PC Debtors. The Monitor's duties also include reporting to the Court on any major events that may impact the viability of the company and notifying creditors of any meetings relating to the CCAA proceedings.

12. The CCAA Order also requests "the aid and recognition of any court . . . to give effect to this Order and to assist [the PC Debtors], the Monitor and their respective agents in carrying out the terms of this Order." The CCAA Order also allows for "[e]ach of [the PC Debtors] and the Monitor be at liberty and is hereby authorized and empowered to apply to any court. . . , wherever located, for the recognition of this Order and for assistance in carrying out the terms of this Order."

---

[1] The Court in *In re Fracmaster, Ltd.*, 237 B.R. 627, n. 3 (Bankr. E.D. Tex. 1999) noted that "[t]he CCAA is a Canadian federal statute which provides a statutory system, roughly equivalent to the Chapter 11 process in the United States, whereby corporations which are insolvent may seek court protection from creditor actions as they attempt to restructure their financial affairs, usually by way of a plan of arrangement or compromise with creditors."

13. On April 12, 2013, the Monitor filed four Chapter 15 petitions on behalf of the PC Debtors (collectively, the "Petitions"). On the same date, the Monitor filed its Motion for Order Directing Joint Administration of the Debtors' Cases [Docket No. 8]. On April 15, 2013, the Court entered its Order Directing Joint Administration of the PC Debtors' Chapter 15 Cases. [Docket No. 12]

14. In conjunction with the Petitions, the Monitor, as the foreign representative in each case, also filed Petitions for Recognition as Foreign Main Proceeding Pursuant to Sections 1515 and 1517 of the Bankruptcy Code and Related Relief. [Docket No. 3] On May 15, 2013, the Court entered its Order Granting Recognition as a Foreign Main Proceeding and Related Relief. [Docket No. 60] In so doing, the Court designated the Canadian Proceedings as the foreign main proceedings for purposes of Section 1517(b) of the Bankruptcy Code.

**Sale of Assets and Case Administration**

15. On April 22, 2013, the Monitor filed its Omnibus Motion for Order (A) Authorizing the Sale of Assets Free and Clear of Liens, Claims and Interests; (B) Authorizing the Debtor to Employ Ernst & Young Orenda Corporate Finance Inc. as Financial Advisor; and (C) Approving Procedures for Sale of Assets (the "Sale Procedures Motion"). [Docket No. 22] Thereafter, on May 10, 2013, the Court entered its Order approving the Sale Procedures Motion. [Docket No. 55]

16. On May 31, 2013, the Monitor filed its Motion for Order Approving Sale of Assets Free and Clear of Liens, Claims and Interests (the "Sale Motion"). [Docket No. 83] As specified in the Sale Motion, the party designated as having submitted the highest and best bid and therefore the successful bidder was Rockwater Energy Solutions, Inc. ("Rockwater")

17. On June 19, 2013, the Court entered its Amended Order Authorizing the Sale of the Purchased Assets Free and Clear of All Liens, Claims and Interests, approving the sale to Rockwater. [Docket No. 119] The sale of the PC Debtors' assets to Rockwater closed on June 24, 2013.

18. Upon the closing of the sale to Rockwater, the operations of the PC Debtors ceased and the board of directors resigned. As a result, the Monitor was granted expanded powers by the Canadian Court pursuant to an order dated September 30, 2013. *See Notice of Change of Status Pursuant to 11 U.S.C. § 1518*. [Docket No. 160]

19. On two occasions, the Monitor has received approval in the Canadian and U.S. Proceedings to make interim distributions to the Lending Syndicate.

20. On July 3, 2013, the Monitor filed its Motion for Authority to Allow the PC Debtors and the Monitor to Make Interim Distribution to the Lending Syndicate. [Docket No. 134] On July 26, 2013, the Court entered its Order Granting Motion for Authority to Allow the PC Debtors and the Monitor to Make Interim Distribution to the Lending Syndicate. [Docket No. 140] On July 30, 2013, the proposed interim distribution to the Lending Syndicate was made in the amount of $31.4 million.

21. On September 16, 2013, the Monitor filed its Second Motion for Authority to Allow the PC Debtors and the Monitor to Make Interim Distribution to the Lending Syndicate. [Docket No. 148] On October 16, 2013, the Court entered its Order Granting Second Motion for Authority to Allow the PC Debtors and the Monitor to Make Interim Distribution to the Lending Syndicate, which authorized the payment of $15,134,000. [Docket No. 161]

**The U.S. Claim Process**

22. The Monitor has requested and received approval in the Canadian and U.S. Proceedings to set deadlines for the filing of claims. On June 21, 2013, the Monitor filed a motion requesting that the Court set a claims bar date. [Docket No. 126] An Order setting the bar date was entered on [Docket No. 129] and amended on July 26, 2013. [Docket No. 141]

23. After the passage of the Claim Bar Date, the Monitor filed objections to various claims and obtained orders or reached settlements with all but one of the creditors asserting secured claims based on possessory liens.

24. The remaining U.S. lien claimant is Rawx, Inc. ("Rawx"), which has asserted a claim in the amount of $494,788.65. That amount is currently held in trust by the Monitor pending either settlement of the claim or the result of an anticipated claim objection.

25. The Rawx claim and the funds reserved for payment of the claim will not be affected by the Amended Plan.

**Pending Litigation**

26. A number of class action lawsuits totaling in excess of $1 billion were commenced in Canada and the U.S. against Poseidon and certain of the Company's officers and directors (the "Class Actions").

27. In addition, a number of class actions were commenced against the Company's auditor, KPMG LLP (Canada) ("KPMG") and certain underwriters who were involved in Poseidon's 2011 public share offering, namely National Bank Financial, BMO Nesbitt Burns Inc., CIBC World Markets Inc., Haywood Securities Inc., Peters & Co. Limited, Canaccord Genuity Corp., Cormark Securities Inc., Dundee Securities Ltd. and First Energy Capital Corp. (the "Underwriters").

28. The Monitor, on behalf of Poseidon, also commenced actions against certain of the directors and officers of the Company and KPMG (the "Monitor Action").

29. The Lending Syndicate also commenced actions against the directors and officers of the Company and KPMG (the "Senior Secured Creditor Action").

30. Further, investigations were commenced by regulatory authorities in Canada and the United States.

**The CCAA Plan**

31. Roughly a year ago, the Monitor filed an Application in the Canadian Proceeding seeking authority to file a Plan of Compromise and Arrangement ("Original Plan") based on a partial settlement of the Class Actions. As of that point in time, agreements had not been reached with KPMG and the Underwriters. Thus, the Original Plan provided that claims against KPMG and the Underwriters would be preserved, while other parties contributing to the settlement would be released. KPMG and the Underwriters resisted approval of the Original Plan.

32. The objective of the Original Plan was to compromise certain claims of the Lending Syndicate, distribute funds to certain priority claimants, facilitate the settlement of outstanding litigation, and to give effect to third party releases in favor of parties who made a substantial contribution to the Plan. Pursuant to the Original Plan, a definitive commitment had been received from the Insurers totaling $36,500,000 (subject to certain deductions as set out in the Plan) representing damages payable by the Insurers in settlement of the Monitor Action, the Senior Secured Creditor Action, and the Class Actions in regard to directors' and officers' liability.

33. Shortly before the application on the Original Plan was to be heard by the Canadian court, all of the parties, including KPMG and the Underwriters reached a global settlement, on which the Amended Plan is based. Under the settlement, an additional $27,000,000 in settlement funds were made available. As a result, KPMG and the Underwriters withdrew objections they previously raised to the Original Plan.

34. On April 26, 2018, the Monitor filed an Application in the Canadian proceeding seeking an order, *inter alia*, extending the stay until September 7, 2018, authorizing the filing of the Amended Plan of Compromise and Arrangement (the "Amended Plan"), and scheduling a meeting of eligible creditors to vote on the Amended Plan. Simultaneously with the filing of the Amended Plan, the Monitor filed his Forty-Eighth Report to the Court. A copy of the Forty-Eighth Report is attached hereto as **Exhibit A**.[2]

35. The Amended Plan is the result of over four years of negotiations by the Monitor and its legal counsel, the Lending Syndicate and its legal counsel, and legal counsel for the Class Representatives, as well as legal counsel for the directors and officers and legal counsel for the Insurers regarding the directors' and officers' insurance, KPMG and the Underwriters.

36. The key provisions of the Plan include:

    a. Under the Amended Plan, the Lending Syndicate's (CAD) $43,944,957.49 allowed claim will be paid exclusively from the Poseidon Settlement Funds and the Property, as those terms are defined in the Amended Plan. The Poseidon Settlement Funds shall consist of up to approximately $22.9 million (CAD). This is in addition to what has previously been paid to the Lending Syndicate pursuant to orders of this Court.

---

[2] The Amended Plan is attached to the Forty-Eighth Report as Appendix B.

      b.      Class Claims, as defined in the Amended Plan, will receive Class Settlement Funds in an amount up to approximately $36.6 million (CADS).

      c.      The claims of all other creditors against the PC Debtors will be preserved as against the Property and are not affected under the Plan.

      d.      In exchange for the payment by the Insurers and others, the Amended Plan provides for releases to be granted to the Insurers, former officers and directors, and others who have contributed to the proposed settlement, including KPMG and the Underwriters.

      e.      The Amended Plan resolves all outstanding litigation related to the PC Debtors and eliminates the significant additional cost of litigating and the risk of an adverse result.

37.    Under the Amended Plan, the claim of the Lending Syndicate will receive payments in the specified amounts. In addition, members of the class will receive a substantial recovery. No distribution will be made on unsecured trade claims under the Amended Plan.

38.    Now that the Amended Plan has been approved in the Canadian Proceeding, the Monitor is seeking an order from this Court recognizing and enforcing the Amended Plan and implementing it in the United States. In order to eliminate the risk of further litigation by class members or creditors in the United States in contravention of the Amended Plan, the Canadian Order should be recognized and enforced in the United States. The Monitor thus requests the assistance of this Court in promoting the finality of this long-negotiated resolution.

## BASIS FOR REQUESTED RELIEF

39. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334, and Section 1501 of the Bankruptcy Code. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(P).

40. Venue is proper in this district pursuant to 28 U.S.C. § 1410(1).

41. The statutory provisions on which the requested relief is based include Sections 1507 and 1521 of the Bankruptcy Code.

42. The Monitor seeks recognition and enforcement of the Plan Order in the United States. A copy of the Plan Order is attached as **Exhibit B**.

43. In Paragraph 41 of the Plan Order, the Canadian Court specifically authorized the Monitor to request this Court's recognition. Paragraph 42 of the Plan Order contains the following language:

> The aid and recognition of any court or any judicial, regulatory or administrative body having jurisdiction in Canada, the United States, or in any other foreign jurisdiction, to give effect to this Order and to assist the Applicants, the Release Parties, the Monitor, the Class Representatives, the Senior Secured Creditors and their respective agents in carrying out the terms of this Order. All Courts, tribunals, regulatory and administrative bodies are hereby respectfully requested to make such orders and to provide such assistance to the Applicants, the Release Parties, the Monitor, the Class Representatives, the Senior Secured Creditors, as may be necessary or desirable to give effect to this Order or to assist them in carrying out the terms of this Order, including, without limitation, by granting representative status to the Monitor in any foreign proceeding.

44. The Forty-Eighth Monitor's Report also expresses the need to have the Plan Order recognized pursuant to Chapter 15 of the Bankruptcy Code.

45. The Monitor submits that the relief requested herein is authorized pursuant to Section 1507(b) of the Bankruptcy Code because enforcement of the Plan Order in the United States is consistent with the principles of comity.

46. Section 1521(a) of the Bankruptcy Code authorizes a court to "grant any appropriate relief" to a foreign representative "where necessary to effectuate the purpose of [Chapter 15] and to protect the assets of the debtor or the interests of the creditors," provided that "the interests of the creditors and other interested entities, including the debtor, are sufficiently protected." 11 U.S.C. §§ 1521(a), 1522(a).

47. In addition to section 1521's grant to order "any appropriate relief," section 1507(b) provides that a court "[i]n determining whether to provide additional assistance . . . shall consider whether such additional assistance, consistent with the principles of comity, will reasonably assure –

> (1) just treatment of all holders of claims against or interests in the debtor's property;
>
> (2) protection of claim holders in the United States against prejudice and inconvenience in the processing of claims in such foreign proceeding;
>
> (3) prevention of preferential or fraudulent dispositions of property of the debtor;
>
> (4) distribution of proceeds of the debtor's property substantially in accordance with the order prescribed by this title; and
>
> (5) if appropriate, the provision of an opportunity for a fresh start for the individual that such foreign proceeding concerns."

11 U.S.C. §1507(b).

48. In deciding whether to recognize and enforce a settlement order or plan of arrangement under Chapter 15, courts are guided by principles of comity and cooperation with foreign courts. *In re Avanti*, 582 B.R. at 616; *Metcalfe*, 421 B.R. at 698. "The Supreme Court has held that a foreign judgment should not be challenged in the U.S. if the foreign forum provides: '[A] full and fair trial abroad before a court of competent jurisdiction, conducting the trial upon regular proceedings, after due citation or voluntary appearance of the defendant, and under a system of jurisprudence likely to secure an impartial administration of justice between the citizens of its own country and those of other countries, and there is nothing to show either prejudice in the court, or in the system of laws under which it [is] sitting . . . .'" *Avanti*, 582 B.R. at 616 (citations omitted).

49. In *Metcalfe*, focusing specifically on extending comity to orders of Canadian courts, the court explained that: "[t]he U.S. and Canada share the same common law traditions and fundamental principles of law. Canadian courts afford creditors a full and fair opportunity to be heard in a manner consistent with standards of U.S. due process. U.S. federal courts have repeatedly granted comity to Canadian proceedings." *Metcalfe*, 421 B.R. at 698. The court noted that, "the issue of the jurisdiction of the Ontario Court to enter the Plan and Sanction Order, and in particular the third-party non-debtor release and injunction provisions, was contested and fully litigated in the Canadian Courts." *Id.* at 699. The court concluded that "[u]nder these circumstances, principles for recognition of foreign judgments strongly support the exercise of this Court's discretion to give *res judicata* effect to the Canadian Orders." *Id.*

50. Moreover, Section 1525(a) of the Bankruptcy Code provides, "consistent with Section 1501, the court shall cooperate to the maximum extent possible with a foreign court or a

foreign representative." The Monitor believes that enforcement of the Plan Order is necessary to give more complete effect to such orders in the United States.

## NOTICE OF THIS MOTION

51. Notice of this Motion is being served on all creditors and parties in interest, including but not limited to, the entire creditor mailing matrix, the United States Trustee for the District of Colorado; counsel for the Lending Syndicate and those individuals or entities that filed proofs of claim in any of the PC Debtors' Chapter 15 cases, pursuant to Fed.R.Bankr.P. 2002 and Colorado L.B.R. 2002-1 and 9013-1.

WHEREFORE, the Monitor respectfully requests that the Court enter its Order granting recognition of the Plan Order and for such other and further relief as is appropriate.

Respectfully submitted this 24th day of May, 2018.

LEWIS ROCA ROTHGERBER CHRISTIE LLP

*s/ Brent R. Cohen*
Brent R. Cohen, No. 11297
Chad S. Caby, No. 30927
1200 17th Street, Suite 3000
Denver, CO 80202
Telephone: (303) 623-9000
Fax: (303) 623-9222
E-mail: bcohen@lrrc.com
ccaby@lrrc.com

*Attorneys for PricewaterhouseCoopers Inc.*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that, on May 24, 2018, a true and correct copy of the foregoing **MONITOR'S MOTION FOR RECOGNITION OF ORDER APPROVING CCAA AMENDED PLAN OF COMPROMISE AND ARRANGEMENT** was electronically filed and served via CM/ECF pursuant to L.B.R. 9036-1 and was served upon the following by depositing same in the U.S. Mail, first class postage prepaid, addressed to the CM/ECF counsel of record on the Court's electronic database as of the date of service of the above. See attached Service List.

*s/ Jennah Little*
OF: LEWIS ROCA ROTHGERBER CHRISTIE LLP

| | | |
|---|---|---|
| Label Matrix for local noticing<br>1082-1<br>Case 13-15893-KHT<br>District of Colorado<br>Denver<br>Thu May 24 10:19:00 MDT 2018 | Mark J. Adey<br>600 1st Source Bank Center<br>100 North Michigan St.<br>South Bend, IN 46601-1600 | Kenneth J. Buechler<br>999 18th St.<br>Ste., 1230 S<br>Denver, CO 80202-2499 |
| Chad S. Caby<br>1200 17th St.<br>Suite 3000<br>Denver, CO 80202-5855 | Brent R. Cohen<br>1200 17th St.<br>Ste. 3000<br>Denver, CO 80202-5855 | Terry Ehrlich<br>7691 Shaffer Pkwy.<br>Ste. A<br>Littleton, CO 80127-3010 |
| Michael J. Guyerson<br>999 18th St.<br>Ste., 1230 South<br>Denver, CO 80202-2414 | Martin E. Long<br>6860 South Yosemite Ct.<br>Ste., 2000<br>Centennial, CO 80112-1448 | Paul Moss<br>Byron G. Rogers Federal Building<br>1961 Stout St.<br>Ste. 12-200<br>Denver, CO 80294-6004 |
| Matthew R. Osborne<br>11178 North Huron Street, #7<br>Northglenn, CO 80234-3343 | Jeremy Peck<br>1801 California St.<br>Ste. 3100<br>Denver, CO 80202-2626 | Patrick H. Pugh<br>1225 17th St.<br>Suite 2300<br>Denver, CO 80202-5596 |
| Robert J. Shilliday III<br>1888 Sherman St.<br>Ste. 760<br>Denver, CO 80203-1160 | Alan S. Thompson<br>950 S. Cherry St.<br>Ste. 900<br>Denver, CO 80246-2666 | Michael B. Watkins<br>600 1st Source Bank Center<br>100 North Michigan St.<br>South Bend, IN 46601-1600 |
| Gregory L. Williams<br>Block Markus & Williams LLC<br>1700 Lincoln,<br>Ste., 4550<br>Denver, Co 80203-4509 | Risa Lynn Wolf-Smith<br>555 17th St.<br>Ste. 3200<br>Denver, CO 80202-3921 | John F. Young<br>1700 Lincoln St.<br>Ste. 4550<br>Denver, CO 80203-4509 |

End of Label Matrix
Mailable recipients    17
Bypassed recipients     0
Total                  17